UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: SEALED SEARCH WARRANT<br>AND APPLICATION FOR A WARRANT | ) )<br>)<br>)<br>)<br>) | **FILED UNDER SEAL**<br>No. 22-MJ-1000 |

### SEALED EMERGENCY MOTION TO INTERVENE, STAY THE GOVERNMENT SEARCH OF CONFIDENTIAL COMMUNICATIONS, AND VACATE THE PRIOR SEARCH PROTOCOL OF PRIVILEGED MATERIALS

Now comes the movant Sean O'Donovan, by and through undersigned counsel, and, pursuant to Fed. R. Crim. P. 41(g), hereby respectfully requests that the Court allow Mr. O'Donovan to intervene, vacate the search protocol of the Court's Order (resulting from an *ex parte* application) authorizing the government's "filter" review procedures, stay any ongoing or future implementation of that protocol in order to protect privileged attorney-client communications and work product from unnecessary executive branch review, and instead approve and Order a new protocol.

As grounds and reasons therefor, Mr. O'Donovan, an active attorney, states that the materials seized by the government contain voluminous communications and other documents subject to the attorney-client privilege and/or work-product doctrine. The government's "filter" or "taint" review procedures, which entail having an Assistant U.S. Attorney and FBI agents not otherwise involved in the investigation review Mr. O'Donovan's potentially privileged communications, infringe upon those privileges causing irreparable harm to Mr. O'Donovan and his clients. The government procedures also reflect an impermissible delegation of judicial

1

authority to the filter team to make unilateral, unreviewable privilege determinations and fail to contemplate any meaningful role for defense counsel in the process.

Mr. O'Donovan requests emergency relief because this infringement on the attorney-client privilege may be ongoing. The government has indicated that, pending further ruling of this Court, it will not discontinue any ongoing or future filter review of the contents of Mr. O'Donovan's phone. While the government has agreed that no materials will be provided to investigators until these issues are resolved, Mr. O'Donovan maintains, as outlined below, that the filter team's review of his privileged communications, in and of itself, infringes upon the privilege.

Mr. O'Donovan respectfully requests that the Court make one of two alternative rulings. First, the Court could conclude, consistent with a recent Fourth Circuit opinion, that the filter team's review of Mr. O'Donovan's attorney-client communications, in and of itself, violates privilege. *See In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 179 (4th Cir. 2019). Second, even if the Court does not agree with the foregoing proposition, it should find that the government procedures at issue here, Ordered as a result of an *ex parte* application, are insufficient to protect privilege. Most notably, the government procedures permit the filter team, including non-attorney members such as FBI agents, to make unilateral, unreviewable privilege determinations and provide no meaningful role for defense counsel to participate in the process to protect the confidentiality of Mr. O'Donovan's attorney-client communications.

Instead of permitting these one-sided procedures, the Court should adopt the requirements recently affirmed by the Eleventh Circuit. In that case, the magistrate judge rejected an "argument that the use of government filter teams to conduct privilege reviews [wa]s

*per se* legally flawed." *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1242 (11th Cir. 2021). But the magistrate nonetheless went on to set out certain minimum requirements to protect privilege, including (1) permitting the party asserting privilege "to conduct the initial privilege review" in order to guard against "the inadvertent disclosure of privileged materials to the investigation and prosecution team"; (2) requiring the party asserting privilege's agreement or a Court Order prior to any production to investigators; and (3) allowing the party asserting privilege the opportunity to participate in litigating any privilege disputes. *Id.* at 1242-43. Here, Mr. O'Donovan is prepared to produce a list of clients and attorneys with whom he believes he has had privileged conversations which are accessible from his phone.[1] The government can then run those search terms against documents it believes to be responsive to the warrant. Documents that do not hit on the search terms should then be provided to defense counsel to confirm that they are not privileged prior to production to investigators. Responsive documents hitting on the search terms should be treated as presumptively privileged. The government filter team should not review the contents of any such presumptively privileged documents but should instead provide them to Mr. O'Donovan's counsel for an initial privilege review. At the conclusion of such review, counsel will provide a privilege log for all documents that it believes to be privileged, which the government will then have the opportunity to challenge.

## REQUEST FOR ORAL ARGUMENT

Mr. O'Donovan respectfully requests that oral argument be held on this Motion.

---

[1] This list will be provided on the condition that, as the government has represented in an email to undersigned counsel, it will "not be used for investigative purposes," with the government reserving the right to "move the court" for investigative "access in the future."

## MEMORANDUM OF LAW

A Rule 41(g) motion "is the proper way to come before the court to seek an injunction regarding the government's use of a filter team to review seized documents." *In re Sealed Search Warrant*, 11 F.4th at 1245 n.6. In ruling upon such a motion, courts have applied the familiar four-factor test for obtaining a preliminary injunction. *See id.* at 1248; *In re Search Warrant*, 942 F.3d at 171. Accordingly, Mr. O'Donovan must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### I.  Background

On January 7, 2022, Magistrate Judge Cabell issued a search warrant for a cellular telephone belonging to Mr. O'Donovan. The warrant authorized search of the phone for "evidence, fruits, or instrumentalities of violations" of 18 U.S.C. § 666, including "Payments to individuals made with the intent to corruptly influence Medford, Massachusetts public officials," and "Contacts with or about public officials who have influence or authority over the licensing or approval of marijuana establishments." Exhibit A, Search Warrant, Attachment B. The warrant was executed on January 14, 2022, and Mr. O'Donovan's phone has since been in the possession of federal agents, who, the defense understands, are currently attempting to decrypt the device so that they can begin reviewing its contents pursuant to the filter procedures outlined below.[2]

Mr. O'Donovan has been an active member of the Massachusetts bar for nearly thirty

---

[2] Mr. O'Donovan maintains that the Fifth Amendment to the United States Constitution prohibits the government from compelling him to provide the device password.

4

years. He maintains a broad practice, which extends far beyond licensing of marijuana establishments to other diverse areas such as criminal defense, personal injury, real estate, worker's compensation, probate, contract, and other matters. The email account used for Mr. O'Donovan's law practice is readily accessible from the phone now in the government's possession. The phone contains thousands of attorney-client and/or work-product protected documents. Such materials include Mr. O'Donovan's privileged communications with hundreds of clients, as well as his communications with co-counsel. Accordingly, review of the contents of Mr. O'Donovan's phone is the functional equivalent of searching a law office. Mr. O'Donovan himself has also occasionally consulted counsel regarding matters entirely unrelated to the government's investigation, and those communications are also included on his phone.

The government has produced a redacted document outlining its "filter" procedures, attached hereto as Exhibit B, which were approved by the Court in *ex parte* proceedings. The document indicates that a filter team consisting of an Assistant U.S. Attorney from this District, a legal assistant from the same office, and FBI Special Agents "will review all responsive seized material except that which could not contain protected material." Exhibit B at 4. The team is directed to treat as "potentially protected materials" "any text, voicemail, letter, e-mail, memorandum, or other document containing a communication between O'DONOVAN (or his agents) and one of his clients . . . , or that otherwise references or reflects attorney advice." *Id.* at 3. The team is tasked with separating such potentially protected materials "into four categories: (1) not protected; (2) protected and cannot be redacted; (3) protected but can be redacted; and (4) potentially protected (*e.g.*, government does not have sufficient information to make that determination, or an exception to the applicable protection, such as crime-fraud or waiver by

disclosure to a third party, may apply)." *Id.* at 4-5. The third and fourth categories must be submitted to the Court before being provided to investigative personnel, but no such judicial review is required for the first category. *Id.* at 5. In conducting its review, and making corresponding privilege classifications, the filter team is expressly permitted to "rely on descriptions from the investigative agents and/or prosecutors concerning the facts of the investigation, and the scope of the warrant." *Id.* at 3. The procedures also contemplate that the filter team may "petition the Court at a later date for permission to seek voluntary and knowing privilege waivers from O'DONOVAN's clients." *Id.* at 2.

For reasons set forth in detail below, application of the government's review procedures will result in a significant and irreversible infringement on the attorney-client privilege. The defense, therefore, requests that the Court vacate its prior Order, stay any ongoing or future review of the contents of Mr. O'Donovan's phone pursuant to the current procedures, and instead require the government to follow procedures akin to those recently affirmed by the Eleventh Circuit.

**II. Argument**

    **A. Mr. O'Donovan is likely to succeed in establishing that the government filter procedures improperly infringe on the attorney-client privilege**

The attorney-client privilege holds a fundamental importance to our criminal justice system, as well as to the American legal system as a whole. It is "the oldest of the privileges for confidential communications known to the common law." *In re Search Warrant*, 942 F.3d at 172-73 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The privilege "empowers a client – as the privilege holder – 'to refuse to disclose and to prevent any other

6

person from disclosing confidential communications between him and his attorney.'" *Id.* at 173 (quoting Black's Law Dictionary 129 (6th ed. 1990)). "And in proceedings such as these, lawyers are obliged to protect the attorney-client privilege to the maximum possible extent on behalf of their clients." *Id.* (noting that law firm from which documents were seized possessed "uncontested standing" to challenge government's filter review process on privilege grounds). "Although the work-product doctrine does not trace as far into history as the attorney-client privilege, it is no less important." *Id.* Under that doctrine, lawyer and client alike hold "a qualified privilege" with respect to "certain materials prepared by an attorney acting for his client in anticipation of litigation." *Id.* at 173-74 (quoting *United States v. Nobles*, 422 U.S. 225, 237-38 (1975)). These privileges, in combination, are intended to permit attorneys to do their jobs effectively. "Absent privacy of communications and the 'full and frank' discussions that flow therefrom, a lawyer could be deprived of the information necessary to prepare and present his client's defense." *Id.* at 174 (citing *Upjohn Co.*, 449 U.S. at 389). Similarly, the work-product doctrine "provid[es] a privileged area within which [a lawyer] can analyze and prepare his client's case." *Id.* (quoting *Nobles*, 422 U.S. at 238).

> 1. *The government filter team's review of privileged documents, in and of itself, infringes upon the privilege*

As the Fourth Circuit recently acknowledged, the government's document-by-document review of Mr. O'Donovan's privileged emails with his clients infringes on the attorney-client privilege. *See id.* at 179 ("The court's authorization of . . . an extensive review of client communications and lawyer discussions by government agents and prosecutors was made in disregard of the attorney-client privilege[ and] the work-product doctrine . . . ."). These

person from disclosing confidential communications between him and his attorney.'" *Id.* at 173 (quoting Black's Law Dictionary 129 (6th ed. 1990)). "And in proceedings such as these, lawyers are obliged to protect the attorney-client privilege to the maximum possible extent on behalf of their clients." *Id.* (noting that law firm from which documents were seized possessed "uncontested standing" to challenge government's filter review process on privilege grounds). "Although the work-product doctrine does not trace as far into history as the attorney-client privilege, it is no less important." *Id.* Under that doctrine, lawyer and client alike hold "a qualified privilege" with respect to "certain materials prepared by an attorney acting for his client in anticipation of litigation." *Id.* at 173-74 (quoting *United States v. Nobles*, 422 U.S. 225, 237-38 (1975)). These privileges, in combination, are intended to permit attorneys to do their jobs effectively. "Absent privacy of communications and the 'full and frank' discussions that flow therefrom, a lawyer could be deprived of the information necessary to prepare and present his client's defense." *Id.* at 174 (citing *Upjohn Co.*, 449 U.S. at 389). Similarly, the work-product doctrine "provid[es] a privileged area within which [a lawyer] can analyze and prepare his client's case." *Id.* (quoting *Nobles*, 422 U.S. at 238).

> 1. *The government filter team's review of privileged documents, in and of itself, infringes upon the privilege*

As the Fourth Circuit recently acknowledged, the government's document-by-document review of Mr. O'Donovan's privileged emails with his clients infringes on the attorney-client privilege. *See id.* at 179 ("The court's authorization of . . . an extensive review of client communications and lawyer discussions by government agents and prosecutors was made in disregard of the attorney-client privilege[ and] the work-product doctrine . . . ."). These

communications were intended to be confidential and to facilitate the provision of legal advice. Review by any government attorney or investigator, whether or not they will participate in the investigation of Mr. O'Donovan, constitutes a clear infringement upon the privilege. Mr. O'Donovan's clients would not want anyone, much less government investigators, to review their privileged communications. The intrusion is especially problematic where, as here, the vast majority of the privileged materials "concern[] other clients and other matters" far beyond the scope of the government's investigation. *Id.*

It is notable that, even in the context of *judicial* review, the Supreme Court has recognized that "[t]oo much judicial inquiry into the claim of privilege would force disclosure of the thing the privilege was meant to protect . . . ." *United States v. Reynolds*, 345 U.S. 1, 8 (1953). As the Supreme Court has subsequently stated, "[o]ur endorsement of the practice of testing proponents' privilege claims through *in camera* review of the allegedly privileged documents has not been without reservation." *United States v. Zolin*, 491 U.S. 554, 570 (1989). For example, "[a] blanket rule allowing *in camera* review as a tool for determining the applicability of the crime-fraud exception . . . would place the policy of protecting open and legitimate disclosure between attorneys and clients at undue risk." *Id.* at 571. The Supreme Court's reluctance to subject privileged communications to judges conducting *in camera* review suggests that disclosure to filter prosecutors, whose principal job is to prosecute crimes, should not occur every time the government chooses to seize an attorney's phone.[3]

---

[3] *Zolin* requires "a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish" lack of privilege before even *in camera* judicial review may occur. 491 U.S. at 572 (citation omitted).

8

The defense acknowledges that this Court has sometimes permitted filter teams to review potentially privileged documents. *See United States v. Aboshady*, No. 16-CR-10278, 2017 WL 4540958, at *3 (D. Mass. Oct. 11, 2017); *United States v. Cadden*, No. 14-CR-10363, 2015 WL 13683817, at *1 (D. Mass. Dec. 15, 2015). In those cases, however, the filter team's right to review the documents was unchallenged. Similarly, while courts of appeals in some other circuits have declined to invalidate search procedures involving filter teams, the defendants in those cases have often failed to timely raise the issue. *See, e.g., In re Search of Elec. Commc'ns in the Acct. of chakafattah@gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d 516, 530 n.53 (3d Cir. 2015) ("[B]ecause [the subject] does not argue that the use of a taint team is inappropriate in his case, we have no occasion to consider the appropriate limits, if any, on their use."); *United States v. Ary*, 518 F.3d 775, 785 (10th Cir. 2008) (finding that defendant who "did not assert protection in a timely fashion" had "waived work-product protection and attorney-client privilege"). There is, therefore, no precedential impediment to this Court's adopting the argument set forth above and the Fourth Circuit's persuasive analysis of this issue.

2. *The government procedures at issue here offer insufficient protection*

Even if, contrary to the foregoing analysis, the Court finds that the mere fact of the government filter team's review of privileged documents does not violate the privilege, it should still find the government procedures at issue here defective in a number of respects. For this reason, Mr. O'Donovan alternatively requests that the Court adopt the filter procedures affirmed by the Eleventh Circuit in its recent *In re Sealed Search Warrant* opinion, namely: (1) permitting Mr. O'Donovan's defense team to conduct the initial review of presumptively privileged documents to protect against any inadvertent disclosures to investigators; (2) requiring Mr.

9

O'Donovan's agreement or Court authorization prior to disclosure of any materials to the investigative team; and (3) allowing Mr. O'Donovan's defense team to participate in the resolution of any privilege disputes. *See* 11 F.4th at 1242-43.

a. initial privilege review by defense team

Use of filter procedures presents "reasonably foreseeable risks to privilege" in the form of "leaks of confidential information to prosecutors." *In re Search Warrant*, 942 F.3d at 177 (citation omitted). While "a filter team might have an interest in preserving privilege, . . . it also possesses a conflicting interest in pursuing the investigation, and . . . some [filter] team attorneys will make mistakes or violate their ethical obligations." *Id.* (citation omitted). The Sixth Circuit has referred to this conflict as "an obvious flaw in the [filter] team procedure: *the government's fox is left in charge of the . . . henhouse.*" *Id.* at 177 (quoting *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006)); *see also In re Search Warrant for Law Offices Executed on Mar. 19, 1992*, 153 F.R.D. 55, 59 (S.D.N.Y. 1994) ("It is a great leap of faith to expect that members of the general public would believe any . . . wall [between a filter team and a prosecution team] would be impenetrable; this notwithstanding our own trust in the honor of an AUSA."). Here, the conflict is doubled by including in the taint team non-lawyers from the FBI, the agency investigating attorney O'Donovan.

Instances in which the government fails to adequately safeguard privilege in utilizing a "filter" or "taint" team have occurred with relative frequency. *See United States v. Sullivan*, No. 17-CR-00104, 2020 WL 1815220, at *8 (D. Haw. Apr. 9, 2020) ("[T]he court entrusted the United States with a unique responsibility to ensure that *any and all* privileged material seized pursuant to the iCloud warrant was not provided to the prosecution team. And in this task, the

10

United States failed."); *United States v. Elbaz*, 396 F. Supp. 3d 583, 589 (D. Md. 2019) (thousands of potentially privileged documents improperly disclosed to prosecution team, which then examined some of the documents); *United States v. Esformes*, No. 16-CR-20549, 2018 WL 5919517, at *20 (S.D. Fla. Nov. 13, 2018) (prosecution team improperly reviewed materials from search before "taint" attorneys had reviewed the materials, despite assertions of defendant's privilege); *United States v. Pearl*, 17-CR-00240 (N.D. Ohio 2018) (Dkt. 72, 79, 81) (reflecting failures of filter process); *United States v. Pedersen*, No. 12-CR-00431, 2014 WL 3871197, at *27 (D. Or. Aug. 6, 2014) (prosecutors failed to notify defense or court for months that prosecution team had reviewed target's legal mail); *United States v. Noriega*, 764 F. Supp. 1480, 1489 (S.D. Fla. 1991) (defendant's conversations with his defense team were not recognized as such by outside screeners and DEA agents performing review).

Permitting the defense team, rather than the government, to conduct the initial review of presumptively privileged documents will protect against "inadvertent disclosure of privileged materials to the investigation and prosecution team." *In re Sealed Search Warrant*, 11 F.4th at 1242. After application of the search terms to identify clients and attorneys with whom Mr. O'Donovan believes he has had privileged communications, the government can first provide the presumptively non-privileged documents (which did not hit on the terms) to the defense for confirmation that they are not privileged prior to those materials being transmitted to investigators. With respect to presumptively privileged documents (which did hit on the terms), Mr. O'Donovan requests that such materials be segregated and their contents not reviewed by the government filter team pending review by the defense. The defense will review the documents, ultimately producing a privilege log for all documents it believes to be privileged, which the

11

government will then have the opportunity to contest. Such a process will ensure that no materials are transferred to investigators (intentionally or inadvertently) unless and until Mr. O'Donovan, who has greatest familiarity with his own law practice and the privileged documents that may exist on his phone, has had an opportunity to review those materials.

### b. requirement of Court authorization

As the above-cited Supreme Court case law makes clear, determining whether or not a particular document is privileged is a judicial function, not a prosecutorial one. *See also In re Search Warrant*, 942 F.3d at 176 (citing cases); Fed. R. Evid. 104(a) ("The court must decide any preliminary question about whether . . . a privilege exists . . . ."). "[A] court is not entitled to delegate its judicial power and related functions to the executive branch, especially when the executive branch is an interested party in the pending dispute." *In re Search Warrant*, 942 F.3d at 176.

The government procedures at issue here reflect an impermissible delegation of judicial power in two distinct respects. First, under those procedures, the government filter team exercises unilateral, unreviewable discretion as to which documents are treated as "potentially protected materials." The government has not provided the defense or this Court with any information regarding how such materials will be initially segregated for review (*e.g.*, a list of proposed search terms), nor do the procedures contemplate a meaningful role for any party other than the government in that process. Instead, both the defense and this Court must simply trust the government to "err on the side of caution." Exhibit B at 3. Second, once the initial segregation of potentially protected materials has occurred, the procedures expressly permit the filter team to produce such materials to the investigative team, without approval of the Court or

12

any opportunity for the defense to object, based on a subsequent unilateral determination that they are, in fact, "not protected." *Id.* at 4-5. The procedures do not even explicitly require that the review be conducted by an attorney. *See id.* at 4 ("The filter team attorney, ***with assistance from other members of the filter team***, will review . . . ." (emphasis added)). This fact increases the risk of "errors in privilege determinations and in transmitting seized materials to an investigation or prosecution team." *In re Search Warrant*, 942 F.3d at 177.

The procedures proposed herein, which require Mr. O'Donovan's agreement or a Court Order prior to any productions to the investigative team, would cure the impermissible delegation. *See In re Sealed Search Warrant*, 11 F.4th at 1243.

      c. defense participation in process

Notably absent from the government procedures is ***any*** meaningful role for defense counsel at any step of the review process. The government is under no obligation to consult counsel, either with respect to the initial segregation of potentially protected materials or the subsequent review and classification process. This aspect of the filter procedures stands in stark tension with the general rule against *ex parte* proceedings. Indeed, "the *ex parte* submission of information from a party to the court and the court's ruling on that information without notice to or participation of the opposing party is fundamentally at odds with our traditions of jurisprudence . . . and can be justified only in the most extraordinary circumstances." *United States v. Tsarnaev*, 968 F.3d 24, 94 (1st Cir. 2020) (citation omitted).

It is Mr. O'Donovan and his defense team, not the government, that is most knowledgeable about his law practice, as well as his own personal attorney consultations, and the related communications that are accessible on his phone. Accordingly, the filter team should be

13

required to consult the defense at each step in the process, and Mr. O'Donovan should be permitted to petition the Court regarding any issues that may arise. Failure to impose such a requirement will predictably result in a heightened risk of privileged information being transmitted to the investigative team. And, now that the search warrant has been executed and the phone is in the government's possession, there is no reason *not* to permit Mr. O'Donovan to be heard on these issues. *See In re Sealed Search Warrant*, 11 F.4th at 1243 ("If the parties are unable to reach a resolution, the parties shall file a joint notice with the Court.").

### B. Mr. O'Donovan and his clients are likely to suffer irreparable harm absent the requested relief

Under the government's review protocol, the infringement upon the attorney-client privilege may begin as soon as Mr. O'Donovan's phone is decrypted (or may already be ongoing). Once the government intrusion on confidential communications occurs, there is simply no way to "unring the bell." *Maness v. Meyers*, 419 U.S. 449, 460 (1975). Several federal courts have held that infringement upon privileged communications, in itself, constitutes irreparable harm sufficient to support issuance of an injunction or other similar relief. *See United States v. Philip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003) (concluding that a party had demonstrated the likelihood of irreparable harm predicated on "the general injury caused by the breach of the attorney-client privilege and the harm resulting from the disclosure of privileged documents to an adverse party"), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009); *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997) (explaining that "forced disclosure of privileged material may bring about irreparable harm"); *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 960-61 (3d Cir. 1984) (ruling that law

14

firm had demonstrated likelihood of irreparable harm where government seized thousands of files containing privileged information); *Matter of 636 South 66th Terrace, Kansas City*, 835 F. Supp. 1304, 1306 (D. Kan. 1993) ("[I]nvasion of the attorney-client privilege through a search and seizure generates an irreparable injury to the possessor of the privilege . . . ."). In short, "the Filter Team's review of the materials seized from [Mr. O'Donovan] is injurious to [him and his] clients. And that harm is plainly irreparable, in that the Filter Team's review of those privileged materials cannot be undone." *In re Search Warrant*, 942 F.3d at 175.

C.     **The balance of equities weighs in favor of granting relief**

The harm to Mr. O'Donovan and his clients "that will be caused by [beginning or] continuing the Filter Team's review outweighs any harm to the government that might result" from Mr. O'Donovan's defense team conducting the initial privilege review. *Id.* at 181. Indeed, the government can credibly claim "no harm . . . in barring the Filter Team from rummaging through" Mr. O'Donovan's legal communications "that are unrelated to the underlying investigation[]." *Id.* Courts routinely use privilege logs to adjudicate privilege disputes, and the government will not be prejudiced by application of such routine procedures here. *See* Fed. R. Civ. P. 26(b)(5). Nor is any delay in the government's investigation a convincing basis for denying Mr. O'Donovan's motion. "[T]he government chose to proceed by securing a search warrant for [an attorney's phone] and seeking and obtaining the magistrate judge's approval of the Filter Protocol." *In re Search Warrant*, 942 F.3d at 181. More targeted methods, such as a grand jury subpoena, were clearly available to the government as alternative procedures for obtaining relevant documents. "The government should have been fully aware that use of a filter team in these circumstances was ripe for substantial legal challenges, and should have

15

anticipated that those challenges could delay its investigations." *Id.* In any event, Mr. O'Donovan's defense team will work to complete the required review in a timely manner and will make every effort to comply with any reasonable deadlines that the government wishes to propose. The government will also have the ability to increase the efficiency of the process by limiting the scope of documents at issue to those relating to specific marijuana clients, which the defense believes will constitute a small minority of the potentially privileged documents on Mr. O'Donovan's phone.

### D.   The requested relief will serve the public interest

The relief requested by Mr. O'Donovan "supports the strong public interest in the integrity of the judicial system." *Id.* at 182 (citation omitted). By contrast, "[f]ederal agents and prosecutors rummaging through law firm materials that are protected by attorney-client privilege and the work-product doctrine is at odds with the appearance of justice." *Id.* at 183; *see also id.* at 182 (citing cases for proposition that government filter teams create appearance of unfairness).

### III.   Conclusion

For the foregoing reasons, Mr. O'Donovan respectfully requests that the Court vacate its prior Order, stay any ongoing or future review of the contents of his phone pursuant to the procedures currently in place, and instead require the review procedures outlined herein.

### COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

Undersigned counsel conferred with the Government, and the Government opposes the relief requested in this Motion.

> Respectfully Submitted,
> SEAN O'DONOVAN
> By His Attorneys,

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

**/s/ Timothy R. Flaherty**
Timothy R. Flaherty, Esq.
Flaherty Law Offices
699 Boylston Street, 12th Floor
Boston, MA 02116
(617) 227-1800
timothyrflaherty@gmail.com

**/s/ Michael Pabian**
Michael Pabian, Esq.
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
pabianlaw38@gmail.com

Dated: February 16, 2022

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, February 16, 2022, a copy of the foregoing document has been served via hand-delivery on AUSA Kristina Barclay.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.